Joyce **SCHWARZ,** Plaintiff,

v.

**UNITED AUTOMOBILE WORKERS UNION, United Automobile Workers Local 2100 and Trico Products Corporation,** Defendants.

No. 92–CV–387A.

United States District Court,
W.D. New York.

April 15, 1993.

Richard Lipsitz, Lipsitz, Green, Fahringer, Salisbury & Cambria, Buffalo, NY, for Defendant UAW.

Thomas E. Brydges, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for defendant Trico.

## ORDER

ARCARA, District Judge.

The above referenced case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on July 21, 1992. On March 23, 1993, Magistrate Judge Heckman filed a Report and Recommendation addressing defendants' motions for summary judgment. Magistrate Judge Heckman recommended that defendants' summary judgment motions be granted, and the case be dismissed in its entirety due to plaintiff's failure to exhaust her non-judicial remedies.

The Court having carefully reviewed the Report and Recommendation, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendants' summary judgment motions are granted and the case is dismissed.[1]

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned by the Hon. Richard J. Arcara for a report and recommendation on Defendants' motions for summary judgment pursuant to 28 U.S.C. § 636(b)(1).

For the reasons set forth below, the District Court should grant Defendants' motions.

Richard J. Steiner, Steiner & Blotnik, Buffalo, NY, for plaintiff.

1. On March 24, 1993, the parties filed a Stipulation for Modification of the Scheduling Order. Item No. 29. Since the Court dismisses this action, the request for a modification of the Scheduling Order need not be addressed.

## FACTS

The Plaintiff, Joyce Schwarz, worked for Defendant Trico Products Corp. from August, 1964, until she retired on December 13, 1991. She was a member of the United Automobile Workers Union ("UAW"), and UAW Local 2100, both of which are named as Defendants.

Since approximately 1986, Trico has transferred much of its work from its Buffalo plants to other Trico facilities, particularly those in Brownsville, Texas and Matamoros, Mexico, "for a variety of economic reasons" (Affidavit of Carl DiRienzo, Item 14, ¶ 4). As of October, 1992, this transfer had resulted in a reduction of the Trico Buffalo work force from approximately 525 salaried and 2,011 hourly employees to 252 salaried and 336 hourly employees (*id.*).

In the spring and summer of 1991, Trico and UAW engaged in negotiations for a collective bargaining agreement. During these negotiations, Trico advised the Union that downsizing of the Buffalo operations would continue, and that only certain "core" operations would remain in Buffalo. Die cast machining, which was Plaintiff's job, was not considered "core," and was slated for elimination (*id.*, ¶ 6).

Also during the collective bargaining negotiations, and in anticipation of significant layoffs resulting from its continued relocation of its Buffalo operations, Trico proposed an early retirement or severance incentive plan, referred to as the "Windows of Opportunity" program. This program was reduced to writing in a document dated October 30, 1991 (Item 14, Exh. A), but was not specifically included in the new collective bargaining agreement. It offered an early retirement/layoff incentive in the form of increased pension benefits or an enhanced cash severance package to employees who elected permanent layoff on or before December 13, 1991. A permanent layoff would mean the loss of seniority for the employee with no recall rights.

Prior to the ratification of the new collective bargaining agreement on November 8, 1991, Trico distributed to its Buffalo employees a detailed explanation of the benefits available under the two "Windows" incentive options, as well as the impact which selection of either option would have on an employee's recall rights (Item 14, Exh. B).

The new collective bargaining agreement allowed the company to hire new employees in any "A" pool position at the rate of $7.00 per hour (Item 14, Exh. D, p. 61). The "A" pool was plaintiff's job classification and was defined as "jobs that require little experience or training" (*id.*, p. 23). Under that provision, new employees could be hired to fill those "A" pool positions, but only after recall from layoff of employees with seniority (*id.*, p. 61). The purpose of this provision was to maintain sufficient personnel to replace those employees who elected one of the "windows."

On November 19, 1991, Plaintiff elected to take permanent layoff under the cash severance option. She received $20,625.00 in three payments. Under the plan, she remained eligible for unemployment and pension benefits, but forfeited her seniority and recall rights. Her permanent layoff became effective on December 13, 1991.

On June 15, 1992, Plaintiff filed this action under unspecified sections of the Labor Management Relations Act ("LMRA"), claiming that Trico fraudulently induced her into early retirement in order to continue its die casting operations with employees who worked for substantially reduced wages. She alleges that her department has not ceased operations, but instead has hired "150 additional employees at reduced wages of $7.00 per hour" (Item 1, ¶ 19). Plaintiff also claims that, based on the same facts, the UAW breached its duty of fair representation.

Defendants now move for summary judgment on the grounds that: (1) the complaint fails to state a cause of action upon which relief may be granted under LMRA since it fails to allege breach of the collective bargaining agreement; (2) the claim is time-barred under the applicable six-month statute of limitations, since the claim accrued on or before December 13, 1991, and was not filed until June 15, 1992; and (3) Plaintiff failed to exhaust contractual or union grievance remedies prior to bringing suit in federal court.

## DISCUSSION

As mentioned above, the complaint alleges that the action "is brought pursuant to the [LMRA] of Title 29, U.S.Code" (Item 1, ¶ 8), but does not otherwise refer to any specific provisions or violations of the LMRA. According to Defendants, the only jurisdictional basis for Plaintiff's claim is set forth at LMRA § 301(a), which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court in the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Indeed, all of the grounds for summary judgment asserted by Defendants presuppose the applicability of this jurisdictional section, which requires exhaustion of contract and union grievance procedures prior to bringing suit. *Clayton v. Automobile Workers*, 451 U.S. 679, 694–95, 101 S.Ct. 2088, 2098, 68 L.Ed.2d 538 (1981). Section 301 claims are governed by the six-month limitation period prescribed in § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b). *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169–72, 103 S.Ct. 2281, 2293–95, 76 L.Ed.2d 476 (1983).

Plaintiff has not cited any authority for a contrary position. Instead, Plaintiff relies on the affidavit of her attorney, which states only that the action "was commenced within the limitations period ..." (Steiner Aff., ¶ 9, attached to Item 19), and that the contract or union grievance procedures do not apply to her since she is no longer a Trico employee or a UAW member (*id.*, ¶¶ 7, 14).

The crucial question for the court on this motion is therefore one of exhaustion—that is, whether the claims asserted by Plaintiff under § 301 of the LMRA for fraudulent misrepresentation on the part of Trico and breach of fiduciary duty on the part of the UAW are precluded by her failure to utilize *either* the grievance procedures provided under the collective bargaining agreement (*see, e.g., Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965)) *or* the internal UAW grievance procedures (*see, e.g., Clayton v. Automobile Workers, supra*). It is not disputed here that both the collective bargaining agreement and the UAW Constitution provide appropriate employee grievance procedures, and that Plaintiff did not utilize either of these procedures prior to bringing this lawsuit in federal court.[1]

It is well established that Section 301 of the LMRA requires the employee to exhaust grievance procedures before bringing suit. *See, e.g., Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976). The Second Circuit's decision in *Dougherty v. American Telephone and Telegraph Co.*, 902 F.2d 201, 203 (2d Cir.1990), is on point. In that case, plaintiffs claimed that their former employers fraudulently induced them to transfer to subsidiary offices by failing to advise the employees of the possibility of consolidation or workforce reductions. The subsidiary offices subsequently closed due to consolidation of operations. Plaintiffs sued in state court alleging common-law fraud and negligent misrepresentation. The defendants removed the case to district court on the ground that plaintiffs' claims were governed by the LMRA. The district court (Hon. John T. Elfvin) granted the defendants' summary judgment motion based on the plaintiffs' failure to exhaust the grievance and arbitration procedures provided in the applicable collective bargaining agreements.

The Second Circuit affirmed, finding that the defendants' obligations to provide accurate information to employees about the future of the subsidiaries were "inextricably intertwined with the collective agreement governing plaintiffs' employment relationship." *Id.* at 204. According to the Second

---

1. The complaint alleges at ¶ 26 that "the Plaintiff has grieved and protested to [sic] deprivation of employment as referred to herein to the Unions Defendant, which has [sic] failed to perfect her rights." However, Plaintiff has conceded her failure to exhaust in her Amended Local Rule 25 Statement (Item 26, ¶ 7).

Circuit, since the employer and the union had specifically modified the collective bargaining agreement in anticipation of contemplated layoffs and transfers, the plaintiffs' claims arose out of "the precise events that caused [the employer and the union] to enter into the negotiations leading to the modification of the collective agreement and concern[ed] the subject matter of those negotiations." *Id.* The Court thus found that the relief sought by the plaintiffs could have been provided by the grievance procedures in the collective bargaining agreements, and affirmed the district court's dismissal of the action for failure to exhaust those procedures.

■ The facts in this case are very similar. In recognition of pending layoffs and transfers of Trico Buffalo employees, Trico and UAW negotiated a new collective bargaining agreement in the summer and fall of 1991 (*see* DiRienzo Aff., ¶ 6, Item 14). During these negotiations, various proposals pertaining to the "Windows of Opportunity" incentives were discussed, and were eventually implemented by Trico, in an effort by management and the Union to offer employees enhanced pension or severance options in anticipation of inevitable job elimination (*see generally,* Fulsom Aff., Item 9, and Exhibits attached thereto). The resulting modifications to the collective bargaining agreement also clearly contemplated the replacement of employees who elected to take advantage of the "Windows of Opportunity" program with new hires at a reduced rate of pay (Item 14, Exh. D). Indeed, as Plaintiff recognizes in her responding affidavit, this provision of the agreement is central to her complaint since it gives Trico the contractual right to replace terminated employees "with new employees at a substantially reduced payroll rate ..." (Item 19, ¶ 17).

As in the *Dougherty* case, therefore, the claims asserted by Plaintiff in this action are "inextricably intertwined" with the collective bargaining agreement governing Plaintiff's employment relationship. The relief sought in this action—lost wages as a result of Trico's hiring replacement workers at a lesser hourly rate—could have been provided, or precluded, by the grievance and arbitration procedures in that agreement.

Plaintiff's only justification for failure to exhaust her contractual or union remedies is that she is no longer a Trico employee nor a UAW member. I find this justification unavailing for several reasons. First of all, Plaintiff has cited no authority for this position, and the Court has found none. Second, the UAW has submitted the uncontradicted affidavit of Robert Walker, Administrative Assistant to UAW President Owen Bieber (Item 24), who states that under Article 6, § 19 of the UAW Constitution, a UAW member in good standing who retires is entitled to "retired membership status" encompassing "all the privileges of membership except the right to vote in elections ..." (Item 12, Exh. 1). It is not disputed that Plaintiff was a UAW member in good standing when she retired.

Since the alleged misrepresentation or breach of duty occurred while Plaintiff was still employed by Trico, Plaintiff cannot avoid the exhaustion requirement by asserting that she is now retired. *See, e.g., Republic Steel v. Maddox, supra,* 379 U.S. at 659, 85 S.Ct. at 619–20 (fact that mine closing eliminated position of foreman, with whom discharged employee was required to discuss his grievance, did not excuse employee from utilizing contractual grievance procedures); *see also Wozniak v. U.A.W.,* 842 F.2d 633 (2d Cir. 1988) (former employee required to fully exhaust Union grievance procedures prior to bringing federal court action); *Brown v. UAW,* 512 F.Supp. 1337, 1348–49 (W.D.Mich. 1981) (Union's duty of fair representation to employee does not end upon employee's retirement), *aff'd,* 689 F.2d 69 (6th Cir.1982).

Furthermore, it would be anomalous to allow Plaintiff to maintain a suit in this court under the LMRA and, at the same time, accept her argument that she is exempt from that statute's exhaustion and limitation requirements. It should be noted that, unlike *Dougherty,* this is not an action that was initially brought in state court as a common-law fraud or breach of fiduciary duty suit and then removed by the defendant to this court. Rather, this action was sued directly in federal court on the basis of federal question

jurisdiction under the LMRA, and therefore unquestionably must be held to that Act's jurisdictional requirements.

Accordingly, I find as a matter of law that Plaintiff's maintenance of this action is subject to the exhaustion requirements for bringing suit under LMRA § 301. Since it is undisputed that Plaintiff did not follow the grievance and arbitration procedures, Defendants' motions must be granted. Plaintiff has not established that she has met any of the recognized exceptions to the exhaustion requirement. *See, e.g., Fleming v. Chrysler Corp.*, 416 F.Supp. 1258, 1262 (E.D.Mich. 1975) (when employer's conduct amounts to repudiation of the collective bargaining agreement's dispute resolution procedures; when the union wrongfully refuses to process a grievance; when to resort to non-judicial remedies would be futile), *aff'd,* 575 F.2d 1187 (6th Cir.1978); *see also, Wozniak v. UAW, supra,* 842 F.2d at 636 (plaintiff required to exhaust internal union remedies unless he showed that union had acted in bad faith or in arbitrary or discriminatory manner, or that such internal procedures would be futile).

As the Second Circuit recognized in *Wozniak,* failure to exhaust is sufficient grounds for entry of summary judgment dismissing the case, without the need to consider the statute of limitations question.

### CONCLUSION

Accordingly, it is recommended that the District Court grant Defendants' motions for summary judgment dismissing the case in its entirety for Plaintiff's failure to exhaust her non-judicial remedies prior to bring suit in federal court under the LMRA.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

**SO ORDERED.**

DATED: Buffalo, New York
March 22, 1993